IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CREWFACILITIES.COM, LLC, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | 1:23-CV-909-DII |
| | § | |
| HUMANO, LLC, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

## ORDER

Before the Court is Plaintiff/Counter-Defendant CrewFacilities.com, LLC's ("CrewFacilities") Motion to Dismiss Defendant/Counter-Plaintiff Humano, LLC's ("Humano") counterclaims. (Dkt. 20). Humano filed a response, (Dkt. 22), and CrewFacilities filed a reply, (Dkt. 23). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be granted.

## I. BACKGROUND

CrewFacilities is a commercial lodging and personnel logistics services company. (Compl., Dkt. 1, at 1). It works with a network of hotels across the country to find lodging and accommodation for other companies' employees. In 2021, CrewFacilities began working with Humano, a transportation and logistics company. (*Id.*). The parties signed a Master Services Agreement ("MSA"), in which Humano would pay CrewFacilities for researching and locating hotels, managing reservations for Humano's employees, and conducting audits of facility charges. (*Id.* at 2). CrewFacilities states that it booked hotel rooms for Humano from June 2021 to March 2023, at a total cost of $34,664,204.28. (*Id.* at 3). CrewFacilities alleges that Humano failed to timely pay invoices in full and now has an outstanding balance of $1,635,300.89. (*Id.* at 4). CrewFacilities

filed suit on August 3, 2023, bringing claims for breach of contract for unpaid invoices under the MSA.

Humano filed its answer and counterclaim on September 8, 2023. (Counterclaim, Dkt. 10). Humano alleges that CrewFacilities failed to return rebates pursuant to their MSA, resulting in a loss of at least $97,000.00. In addition, Humano alleges that CrewFacilities failed to indemnify it from third-party claims and that CrewFacilities committed fraud by requesting invoices which had already been paid. (*Id.* at 13–15). Most importantly for the purposes of this motion, Humano brings a claim under the Texas Deceptive Trade Practices Act ("DTPA"), arguing that Humano "detrimentally relied on the false representations made by CrewFacilities that CrewFacilities would perform the services specified in the MSA, and that it would use the funds paid by [H]umano to pay for the services that were the basis of the MSA." (*Id.* at 15).

On September 28, 2023, CrewFacilities moved to dismiss Humano's DTPA counterclaim. (Mot. Dismiss, Dkt. 20). It argues that the DTPA does not apply to projects or series of transactions involving the same project that exceed $500,000. (*Id.* at 2–4). Humano responded, arguing that the DTPA counterclaim is based on occurrences unrelated to the MSA and that its plausible discovery will show claims separate from the parties' contractual work.[1]

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To

---

[1] On February 6, 2024, the Court ordered the parties to provide supplemental notices on whether complete diversity existed when CrewFacilities filed its complaint. (Order, Dkt. 29). The parties' submissions show that their respective LLCs are completely diverse. (Dkts. 30, 31).

survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

The Texas DTPA prohibits claims involving transactions (or series of transactions) for more than $500,000, stating:

> Nothing in this subchapter shall apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence.

Tex. Bus. & Comm. Code § 17.49(g).

3

There is no genuine dispute that the agreement at issue here—the MSA—contemplates a series of transactions worth well over $500,000. (Compl., Dkt. 1, at 3–4). In total, Humano's invoices exceed $30 million, the result of many different hotel bookings between the parties. (*Id.*).[2] Because the MSA involves transactions worth more than $500,000, CrewFacilities argues that Humano's DTPA claim must be dismissed. (Mot. Dismiss, Dkt. 20).

In response, Humano focuses on whether the events underlying its DTPA claim arise from transactions relating to the MSA. (Resp., Dkt. 22, at 5). Humano alleges that its DTPA claim does not relate to the MSA transactions, but instead "stems from [CrewFacilities'] practice of 'knowingly, falsely, and with malicious intent, represent[ing] to hotels that [H]umano had not paid its invoices, and attempt[ing] to assign its right to collect payment from [H]umano to hotels.'" (*Id.* (quoting Counterclaim, Dkt. 10, at 13)). Because these claims are purportedly outside the scope of the MSA and potentially for less than $500,000, Humano argues they are not barred by the DTPA.[3]

Ultimately, this argument is unconvincing for two reasons. First, even as Humano describes it, the DTPA claim appears highly intertwined with the MSA. Humano's core argument is that its DTPA claims do not relate to the MSA but to the wrongful collection of unpaid invoices from the MSA. This is unavailing—collection of unpaid money under a contract is interrelated with the breach of contract itself. The issue of unpaid invoices does not arise unless CrewFacilities and Humano enter into a contract in the first place. Without the MSA, CrewFacilities cannot assign payment collection to third parties.

---

[2] The MSA is attached to CrewFacilities' complaint and is incorporated by reference for the purposes of the 12(b)(6) motion. *Dorsey*, 540 F.3d at 338.

[3] Humano's counterclaim itself admits that the DTPA claims are related to the MSA. It states, "[Humano] detrimentally relied on the false representations made by CrewFacilities that CrewFacilities would perform the services specified in the MSA, and that it would use the funds paid by [H]umano to pay for the services that were the basis of the MSA." (Counterclaim, Dkt. 10, at 15). Humano differentiates its DTPA claims in its response to the motion to dismiss. (Dkt. 22).

Nor do Texas courts take such a narrow reading of § 17.49(g). To the contrary, Texas courts applying § 17.49(g) "have done so considering the purpose of § 17.49(g), which is to 'maintain the DTPA as a viable source of relief for consumers in small transactions and to remove litigation over large transactions between businesses from the scope of the DTPA.'" *McCoy v. Valvoline, LLC*, 568 F. Supp. 3d 666, 676 (N.D. Tex. 2021) (quoting *Mullins Square, Inc. v. Source 2 Market, LLC*, No. A-08-CA-777-SS, 2009 WL 10669887, at *3 (W.D. Tex. Dec. 14, 2009)). Texas courts "broadly construe[] the large-transactions exemption . . . ." *Id.* (quoting *Encon International, Inc. v. Barbour Group, LLC*, No. 11-2137-KGS, 2013 WL 12250908, at *12 (D. Kan. Sept. 27, 2013)). The dispute between Humano and CrewFacilities is just the sort of business transaction that Texas meant to bar with the $500,000 cap. And the assignment of payments under a contract is the sort of ancillary claim that falls under § 17.49's broad scope.

Humano is correct that at the pleading stage, the Court must draw all reasonable inferences in favor of the non-moving party. (Resp., Dkt. 22, at 5); *In re Katrina*, 495 F.3d at 205. The non-moving party must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Humano argues, "It is wholly plausible that discovery will show that [H]umano's claims are separate and apart from the parties' contractual work, and therefore not within the exemption in § 17.49(g)." (Resp., Dkt. 22, at 5). The Court disagrees. It is *conceivable* that Humano may discover DTPA claims outside the MSA. But Humano must plead facts which push its claim from the conceivable to the plausible. *Twombly*, 550 U.S. at 570. Humano's DTPA claim only contain facts related to the MSA. While it remains theoretically conceivable that some DTPA claims could arise outside the MSA, the facts of the counterclaim do not suggest that such an outcome is plausible.

The second problem with Humano's DTPA claim is that it does not plausibly allege detrimental reliance. DTPA claims only include those "relied on by a consumer to the consumer's detriment." Tex. Bus. & Com. Code § 17.50(a)(1)(B); *Huang v. Don McGill Toyota, Inc.*, 209 S.W.3d

674, 679 (Tex. App.—Houston 2006, no pet.). Attempting to differentiate its DTPA claims from the MSA, Humano describes CrewFacilities' deceptive actions as "represent[ing] to hotels that [H]umano had not paid its invoices" and "assign[ing] its right to collect payment . . . to hotels." (Resp., Dkt. 22, at 5). But Humano cannot claim it detrimentally relied on statements made by CrewFacilities to a third party (and without Humano's knowledge). A party cannot detrimentally rely on statements they do not know about.

To show reliance, Humano must have been on the receiving end of CrewFacilities' representations. Given that the MSA governs the parties' business relationship, any such representations would presumably arise under that contract, rendering them barred by § 17.49(g). In other words, the DTPA claim either arises under the MSA, in which case it is statutorily barred, or it involves statements made to third parties, in which case there is no detrimental reliance. Either way, the claim must be dismissed.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that CrewFacilities' counterclaim, (Dkt. 20), is **GRANTED**. Humano's counterclaim for DTPA violations, (Dkt. 10), is **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** on March 7, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE